# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PETROL GOLF MANAGEMENT COMPANY, LLC d/b/a THE GOLF CLUB OF DALLAS, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO.  3:16-cv-01551 |
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | § § § § | |
| Defendant. | § § | |

## EXHIBIT A

1.  Index of All Documents Filed in the State Court Action

2.  Docket Sheet in the State Court Action

3.  Documents filed in the State Court Action

    a.  Plaintiffs' Original Petition and Request for Disclosure
        Filed:  March 21,2016

    b.  Defendant's Answer to Plaintiffs' Original Petition
        Filed:  May 31, 2016

# Exhibit A-1

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PETROL GOLF MANAGEMENT COMPANY, LLC d/b/a THE GOLF CLUB OF DALLAS, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO.  3:16-cv-01551 |
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | § § § | |
| Defendant. | § § | |

## INDEX OF DOCUMENTS FILED IN STATE COURT ACTION

1. Plaintiff's Original Petition and Request for Disclosure
   Filed: March 21, 2016

2. Defendant's Answer to Plaintiff's Original Petition
   Filed: May 31,2016

# Exhibit A-2

# DC-16-03398 - PETRO GOLF MANAGEMENT COMPANY LLC vs. TRAVELERS PROPERTY AND CASUALTY COMPANY OF AMERICA

Case Number: DC-16-03398
File Date: 03/21/2016
Case Status: OPEN

Court: 116th District Court
Case Type: CNTR CNSMR COM DEBT

PLAINTIFF : PETRO GOLF MANAGEMENT COMPANY LLC
  Aliases:
  *DBA* THE GOLF CLUB OF DALLAS
  Address:
    329 Centre Street
    Dallas TX 75208

Active Attorneys
  Lead Attorney:
    **SHACKELFORD, CHARLES DOUGLAS**
    Retained
    Work Phone: 214-941-6911
    Fax Phone: 214-941-4755

DEFENDANT : TRAVELERS PROPERTY AND CASUALTY COMPANY OF AMERICA
  Address:
    SERVE AT CORPORATION SERVICE COMPANY
    211 E. 7th STREET SUITE 620
    AUSTIN TX 78701

Active Attorneys
  Lead Attorney:
    **HOLBROOK III, JAMES W**
    Retained
    Work Phone: 214-742-3000
    Fax Phone: 214-760-8994

03/21/2016 NEW CASE FILED (OCA) - CIVIL
03/21/2016 CASE FILING COVER SHEET
    Civil Case Information Sheet.OCR.PDF
    Comment: Civil Case Information Sheet
03/21/2016 ORIGINAL PETITION
    Plaintiff's Original Petition and Request for Disclosure.OCR
    Comment: Plaintiff's Original Petition and Request for Disclosure
03/21/2016 ISSUE CITATION
03/30/2016 CITATION ISSUED
    DC1603398.pdf
03/30/2016 CITATION
    Anticipated Server: ESERVE                    Anticipated Method:
    Comment: ESERVE RR
05/31/2016 ORIGINAL ANSWER - GENERAL DENIAL
    Def's Answer.pdf

Civil Case Information Sheet.OCR.PDF
Plaintiff's Original Petition and Request for Disclosure.OCR

Def's Answer.pdf

# Exhibit A-3

# Exhibit A-3-a

1 CIT ES

Case 3:16-cv-01551-D   Document 1-3   Filed 06/09/16   Page 10 of 38   PageID 17

FILED
DALLAS COUNTY
6/21/2016 4:43:14 PM
FELICIA PITRE
DISTRICT CLERK

DC-16-03398

CAUSE NO.: _____

Angie Avina

| | | |
|---|---|---|
| PETRO GOLF MANAGEMENT COMPANY, LLC. d/b/a THE GOLF CLUB OF DALLAS | § § § § | IN THE DISTRICT COURT |
| VS. | § § | _____ JUDICIAL DISTRICT |
| TRAVELERS PROPERTY AND CASUALTY COMPANY OF AMERICA | § § | DALLAS COUNTY, TEXAS |

### PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE

COMES NOW, Petro Golf Management Company, LLC, d/b/a The Golf Club of Dallas, hereinafter known as Plaintiff, and complains of Travelers Property and Casualty Company of America, hereinafter referred to as Defendant, and for cause of action would state the following:

### I. PARTIES

Plaintiff is a corporate entity whose offices and business interests are located in Dallas County, Texas.

Defendant Travelers Property and Casualty Company of America is an insurance company authorized by the State of Texas to write insurance policies within the State of Texas and operates extensively in Texas and particularly in Dallas County, and may be served with process at: ***Corporation Service Company; 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.***

### II. DISCOVERY

Plaintiff maintains that monetary relief sought in this lawsuit is in excess of $1,000,000.00. Plaintiff maintains that discovery in this matter should be conducted pursuant to TRCP 190.3 (Level 2), however the Plaintiff reserves the right to seek an order of the Court under TRCP 190.4 to modify that schedule should it be found necessary in the interest of justice.

*Plaintiff further makes their TRCP 194 REQUEST FOR DISCLOSURE upon the Defendant, seeking all information listed in TRCP 194.2(a)-(l).*

### III. FACTS

Plaintiff, Petro Golf Management Company, LLC, owns and operates a county club and golf course facility known as The Golf Club of Dallas. They have done so from April 2012 to present.

On or about November 2011, Plaintiff's predecessor in interest entered into a contract of insurance with Defendant Travelers Property and Casualty Company of America (Travelers) to insure the property and buildings commonly known as the The Golf Club of Dallas, which is located at 2200 W. Redbird Lane, in southern Dallas County Texas. In contemplation of providing that insurance policy, agents, servants and employees of Defendant Travelers visited Plaintiff's premise and were given full and unrestricted access to the building and roof to inspect and evaluate it's condition and to satisfy themselves it met their standards of insurability prior to and as a condition precedent to writing their policy of insurance. Plaintiff contends there were no known issues addressed concerning the condition or viability of the roof system when insured, and Plaintiff maintains that the policy of insurance provided by Defendant Travelers contained no exclusions, exceptions or limitations on Defendant Traveler's insurance coverage for the roof or the building because of age or condition. That policy of insurance was issued in Dallas County, Texas.

In April of 2012, Plaintiff, Petro Golf Management Company, LLC purchased the entire country club and golf operation, including all business and real property assets. As part of that acquisition, Plaintiff properly transferred coverage of the insurance policy in question and was made the named insured under the policy issued by Defendant Travelers, and thereafter paid premiums pursuant to the terms of that policy. Plaintiff maintains that Defendant Travelers again had complete and unfettered access to inspect and evaluate the building and roof systems, and again placed no exclusions,

exceptions or limitations of any kind on insuring the entire roof system.

On June 13, 2012, during the policy period, a severe hail storm struck southern Dallas County, more specifically the Plaintiff's Main Clubhouse. Because of the overall structure of the building, the extent of the damage was not immediately apparent to the untrained eye of the Plaintiff, however, over time, water penetrating the damaged roof system migrated into the building substructures and eventually into the building itself. Plaintiff attempted to make repairs and mitigate their damages, however, upon realizing that the scale of damage from the hail was extensive, they made a claim with Defendant Travelers.

## IV. TRAVELERS ACTIONS

In 2013, Plaintiff filed a claim with Defendant Travelers for the June 13, 2012 hail damage pursuant to the terms of the policy. Over the course of the next few months, Plaintiff was in contact with agents, servants and employees of Defendant Travelers in attempts to secure repair of the roof or payment of the claim. Defendant Travelers did not take immediate action to fully investigate, evaluate or address the problem, but engaged in general and systematic delays in addressing the Plaintiff's claim. Plaintiff contends that after protracted discussions and a long delay, Defendant Travelers began to promote unsubstantiated and unsupported theories that the roof was allegedly too deteriorated by age to function properly, and that they needed more time to determine if it was an insurable event.

Prior to Defendant Travelers' issuance of the policy in question, Unified Building Science and Engineering Inc.(UBSE) had been hired by a previous insurance carrier to do an extensive evaluation of the roof system of Plaintiff's main building, which is the building roof system that is the subject of this lawsuit. On March 4, 2011, UBSE did an exhaustive and extensive analysis of the roofing system, taking core samples and doing offsite scientific testing. The general result of their examination in 2011 found that, apart from some minor repairs, the roof system was in satisfactory condition, not damaged

by a previous reported hail storms, and as of March 2011, had no damage that should grossly effect it's function or produce an insurable claim. Armed with ample evidence that the roof was satisfactory when it was insured, Plaintiff began to provide Defendant Travelers evidence of their claim.

Plaintiff provided proof that extensive roof work had been done to the building less than 10 years and 2 years prior to this hail event, they provided the roof inspection report of UBSE from March 2011 stating that there was no hail damage sufficient to cause leaks. Plaintiff also verified that prior to the hail event of June 13, 2012, they suffered no appreciable leakage. Plaintiff provided Defendant Travelers good and sufficient evidence indicating that the roof system was working within it's design perimeters and was functioning properly prior to the hail event. Plaintiff also provided substantive evidence that the roof structure had failed after the hail event. Despite this overwhelming evidence, Defendant Travelers continued to unreasonably delay properly adjusting the claim. Continued efforts by Plaintiff to get a resolution of this claim were simply met by more delays.

Nearly two (2) years after the subject hail storm, Defendant Travelers hired UBSE to again come back to reexamine the property and to do testing on the roof which they previously tested in 2011. In March 2014, nearly two (2) years after the subject hail event and after the roof system had suffered two (2) years of failure, USBE again examined the roof. Plaintiff maintains the hiring of UBSE so late and long after the event was part and parcel of a knowing and intentional attempt by Defendant Travelers to further delay the claim and at the same time, create the illusion of fact gathering designed to give them a defensible basis for falsely delaying and denying Plaintiff's claim.

## V. TRAVELERS ACTION-DELAYS 2013-2015

Plaintiff maintains that Defendant Travelers, after stone-walling Plaintiff since 2013, used UBSE to create a misleading and incomplete report in 2014 solely to create an illusionary fact basis for Defendant Travelers' actions and provide them an arguable defense for their unreasonable delay in their

claim settlement practices with Plaintiff.

Plaintiff contends that UBSE reexamined the roof of Plaintiff's building in 2014 and found that it had failed. This reexamine came a mere three (3) years after USBE completed an extensive and in depth examination of that same roof that utilized many of the modern and scientific investigatory methods of the time. In 2011, onsite and offsite scientific tests were performed. Core samples and material samples taken. Defendant Unified went to great lengths in 2011 to establish the roof did not sustain damage by an earlier hail storm, and that apart from a few repairs, their findings established the roof was completely serviceable.

Plaintiff maintains that in 2014, UBSE inexplicably abandoned use of those extensive tests and failed to carry out most, if not all, of the basic scientific testing they relied on in 2011, and the resulting inconsistencies in the manner and extent of the testing that was done, and lack of depth and detail in their methodology, as was implemented and used in their first examination, indicates that not only are their broad and conclusionary findings of the 2014 report unsound, but that their finding that a commercial roof system went from acceptable in 2011 to catastrophic failure in 2014 (three (3) years), without an intervening cause such as the hail storm of 2012 is at best, suspect.

The limited inspection of UBSE's second examination was clearly limited to the scope of work authorized by Defendant Travelers, and UBSE's actual generation of such a report at Defendant Travelers' request shows a clear and unequivocal bias on the part of UBSE and is indicative of the unreasonable, intentional and unfair claims practices Defendant Travelers engaged in with this claim.

## VI. DEFENDANT TRAVELERS EXTENDS THE DELAY-2016

When it became clear that inconsistencies in UBSE's two reports were conflicting, Defendant Traveler hired yet another expert to evaluate the property. On September 9, 2015, Plaintiff voluntarily allowed Defendant Travelers complete access to the facility to have the roof system examined by yet

another of Defendant Traveler's "experts", Lassiter, and they were again granted permission to do any testing necessary, including core samples if needed. It was the agreement of the parties that the report generated would be shared for review. Now, 6-1/2 months later, Defendant Travelers has yet to make the Lassiter report available, further delaying the Plaintiff's claim and making this lawsuit necessary.

### VII. TRAVELERS' BREACH OF CONTRACT

The Travelers' policy issued to Plaintiff in November 2011 was through it's local agent, servant or employee, All American Insurance Associates, located in Granbury Texas. The Insurance policy insured Plaintiff's business and property popularly known as The Golf Club of Dallas. The policy issued by Defendant Travelers through AAIA was intended to be a comprehensive policy, covering all aspects of the building and grounds, and remained in effect until November 21, 2012. Pursuant to the terms of the policy issued by Defendant Travelers, Plaintiff insured their buildings and business personal property in the amount $5,317,000.00. As part and parcel of that coverage, the policy also provided insurance coverage for hail storm damage to all or part of those structures, including the roof of the main building in question. The entire commercial policy is too voluminous to attach hereto, so a summary of the declaration sheet is attached hereto as Exhibit A. That policy was in full force and effect at the time of loss complained of. Plaintiff maintains that as a First-party insured under that policy of insurance, Defendant Travelers owed them the common law duty of good faith and fair dealing in any and all claims practices, as well as similar statutory obligations under Texas Insurance Code, Sec. 541.060.

All conditions precedent to it's rights of recovery have been performed by Plaintiff or have occurred.

Despite the fact Plaintiff fully cooperated with Defendant Travelers and has properly made demand under the terms of the policy and Texas law, Defendant Travelers has refused to pay Plaintiff in

accordance with Travelers' contract obligations. Furthermore, Defendant Travelers unjustifiably denied or delayed payment under the policy attached as Exhibit A, compelling Plaintiff to institute this litigation.

## VIII. TRAVELERS BAD FAITH

Without waiving the foregoing and in the alternative or in addition to the above, Plaintiff maintains that Defendant Travelers, as the expert in insurance coverage for roofs, had full access to the roof at all times prior to and during their insuring process. Plaintiff maintains that Defendant Travelers satisfied itself that the roof met their own standards of insurability just seven (7) months prior to the event date and that the insurance was for complete coverage of the roof with no limitations, exclusions or exceptions. Upon their issuing of the policy, Plaintiff in turn relied upon Defendant Travelers' representations and were induced to pay all premiums under terms of the contract as were set forth by Defendant Travelers.

Upon receiving the claim from Plaintiff, Defendant Travelers immediately embarked on a path of delay and avoidance. Agents, servants and employees of Defendant Travelers, under the guise of attempting to properly address the issue, continued to delay the resolution of the matter by requesting Plaintiff provide irrelevant and abstract information to them concerning issues not directly related to the hail damage of June 13, 2012.

Plaintiff went above and beyond policy requirements and exceeded what was needed to place Defendant Travelers on reasonable notice of the claim and substantiate their damages. Plaintiff provided expert reports and assessment from numerous experts indicating that the roof was undamaged by hail prior to the claimed event, and was damaged by hail after the event. After an inordinate amount of time, Defendant Travelers responded by issuing a Reservation of Rights and sought to have the roof

"re-examined" by Defendant Unified, nearly two (2) years after the event.

Plaintiff maintains that Defendant Travelers, at all times material to the reasonable and accepted time frame for adjusting this claim, had no reasonable facts or information in their possession that would create a legitimate basis for their denial or delay of this claim, but they continued to delay resolution of this claim after it had become reasonably clear that they owed the Plaintiff.

Plaintiff further alleges that Defendant Travelers knowingly and with intent did attempt to circumvent their liability by delay and the repeated hiring of biased experts to create for them a defense to this claim where none existed. As stated above, Defendant Travelers engaged and paid Unified and others in 2014 and 2015 to perform flawed tests and inadequate examination of the Plaintiffs roofing system, and now, three (3) years later, seeks to stall and take actions to continue delay of this claim. Plaintiff maintains this delay is further evidence of Defendant Travelers intent to delay to the matter even further, and has caused Plaintiff to bring this lawsuit now to protect their interests.

Plaintiff maintains the actions of Defendant Travelers in this regard constitute a breach of their duty to Plaintiff of good faith and fair dealing, and rise to the level of common law bad faith. Plaintiff contents that such a breach has caused damages, as set forth below, and seeks recovery from Defendant Travelers herein.

## IX. TRAVELERS STATUTORY VIOLATION

Plaintiff incorporates all of the above herein as if set forth at length. Without waiving any of the foregoing, and in the alternative or in addition to the above, Plaintiff maintains that the actions of Defendant Travelers set forth herein constitute a violation of Texas Insurance Code, Sec. 541.060. Further, Plaintiff maintains that Defendant Travelers knowingly committed the acts complained of, and Plaintiff should be awarded treble damages under Texas Insurance Code, Sec. 541.152(b).

## X. DAMAGES

Plaintiff maintains that since the time of the hail storm in June 13, 2012, the failure of Defendant Travelers to attempt in good faith to effectuate a prompt, fair and equitable settlement of their claim and in turn allow Plaintiff to timely repair the roof has caused additional undue and unnecessary damage to Plaintiff's building and business. The original damage to the roof system has escalated into major damage throughout the building structure itself and to fixtures and improvements inside as well. Water penetrating and pouring into the building and onto various components of the structure has caused damage to items such as classic wooden lockers and wood flooring, as well as causing the closure of various parts of the building which were historical icons of the facility and profit centers for the Plaintiff. Because the damage has now affected so many systems throughout the building, local building code requires many of those systems be updated to current code levels, further increasing the costs and Plaintiff's damages.

In that regard, the damaged ceilings and floors and closed off areas which were traditionally open to Club members have had an adverse effect on retaining Club members, acquiring new members or soliciting new business and events such a golf tournaments or parties. Buckets sitting around the Clubhouse as water pours through the ceiling in multiple areas has alienated members and created discontent among the Club membership, which in turn, has adversely affected Plaintiff's business and reputation. Since the time of this hail event, Plaintiffs maintain they have lost business and their profits have suffered, creating a loss for which they seek recovery.

Plaintiff further contends that the delays by Defendant Travelers has made repair of this damage a major undertaking to correct the extended damages inside the building, requiring that the entire facility be closed for an estimated three (3) months during those repairs, requiring the Plaintiff to either

close their main facility completely or establish and operate the business from temporary buildings to mitigate their damages.

Defendant Travelers actions has caused Plaintiff to retain counsel to address this claim, who on July 5, 2015, notified Defendant Travelers of the cost of repairs to that date and made demand for payment. See Exhibit "B" attached. In summary, as of that date, Plaintiff estimated that the cost to repair the original damage to the roof and repair the subsequent damages to the interior of the building and it's component parts to be $2,044,083.28. Plaintiff further supplied Defendant estimates of their economic losses and damage to business reputation and goodwill would exceed $1,000,000.00. Plaintiff maintains since the time of that notice, damages are unresolved and escalating. Defendant has not tendered payment.

By reason of all of the foregoing, Plaintiff states that they seek damages in this matter in excess of the minimum jurisdictional limits of this Court.

## XI. ATTORNEY'S FEES

As stated above, proper notice of the claim and demand for payment have been made on Defendant Travelers, and more than thirty (30) days has elapsed and payment of the claim has not been made by Defendant Travelers. As a result of the Defendant Travelers' failure to pay this claim, Plaintiff has been required to retain the undersigned legal counsel to institute and prosecute this action. Plaintiff is entitled to recover an additional sum for reasonable attorney's fees to compensate their attorney for services rendered to bring and prosecute this action. Plaintiff requests that the Court award additional fees for any necessary actions in the future for services render by their counsel before the Court of Appeals or the Supreme Court of Texas.

## XII. JURY DEMAND

Plaintiff respectfully requests a trial by jury.

WHEREFORE, Plaintiff requests that the Defendant be cited to appear and answer herein, and that upon final trial of this cause, Plaintiff recover:

1. Judgment against the Defendant for Plaintiff's damages as set forth above, in an amount in excess of the minimum jurisdictional limits of this Court;

2. Treble damages as allowed by law;

3. Attorney's fees;

4. Interest on said judgment at the legal rate from the date of judgment;

5. Prejudgment Interest as allowed by law; *and*

6. Such other and further relief at law or equity to which Plaintiff may show themselves to be justly entitled.

Respectfully submitted,

**Charles D. Shackelford**
ATTORNEY AND COUNSELOR AT LAW
SBN: 18069800
329 W. Centre Street
Dallas, Texas 75208
214.941.6911 Telephone
214.946.4755 Facsimile
thelawfirm@sbcglobal.net
**ATTORNEY FOR PLAINTIFF**

THE GOLF CLUB OF DALLAS

| Deluxe Property |

## Coverages And Limits Of Insurance - Described Premises

Insurance applies on a BLANKET basis only to a coverage for which a Limit of Insurance is shown, as per Statement of Values dated 10/4/2011, and at locations subsequently reported to and insured by us. For insurance that applies to a specific premises location see Deluxe Property Coverage Part Schedule - Specific Limits.

## Deluxe Property Coverage Form

| Blanket Description of Coverage or Property | Limits of Insurance |
|---|---|
| Building and Your Business Personal Property | $5,317,000 |

**Coinsurance Provision:**
Coinsurance does not apply to the Blanket Coverages shown above.

**Valuation Provision:**
Replacement cost (subject to limitations) applies to any types of covered property shown above.

## Optional Coverages

| | Limits of Insurance |
|---|---|
| Personal Property at Undescribed Premises: | |
| At any one Exhibition | $100,000 |
| At any one Installation | $100,000 |
| At any other Not Owned, Leased or Regularly Operated Premises | $100,000 |
| | |
| Personal Property in Transit | |
| In any one conveyance by: | |
| Common or Contract Carrier | $50,000 |
| Railroad | $50,000 |
| Air Carrier | $50,000 |
| Insured's Vehicles | $50,000 |
| Watercraft | $50,000 |
| In any one occurrence: | $50,000 |

Exhib



THE GOLF CLUB OF DALLAS

## Deluxe Property Coverage Form - Additional Coverages & Coverage Extensions

The following Limits of Insurance are included in the coverage form and apply in any one occurrence unless otherwise stated. Revised limits, if any, will be stated in the column on the right.

|  | Limits of Insurance | Revised Limits of Insurance |
|---|---|---|
| Accounts Receivable: | | |
| On premises | $25,000 | $1,000,000 |
| In transit or at undescribed premises | $10,000 | $1,000,000 |
| Appurtenant Buildings and Structures | $100,000 | |
| Claim Data Expense | $25,000 | $50,000 |
| Debris Removal (additional limit) | $250,000 | |
| Expediting Expense | $25,000 | |
| Extra Expense | $10,000 | |
| Fine Arts | $50,000 | |
| Fire Department Service Charge | Policy Limit | |
| Fire Equipment Discharge | Policy Limit | |
| Newly Constructed or Acquired Property: | | |
| Buildings - each | $2,000,000 | |
| Personal Property at each premises | $1,000,000 | |
| Ordinance or Law | $250,000 | $1,000,000 |
| Outdoor Property | $25,000 | Not Covered |
| Overseas Business Travel - Personal Property | $25,000 | |
| Personal Effects | $25,000 | |
| Personal Property at Undescribed Premises - Limited* | $10,000 | |
| Personal Property in Transit - Limited* | $10,000 | |
| Pollutant Clean-Up and Removal - Aggregate | $100,000 | |
| Preservation of Property | Policy Limit | |
| Reward Coverage | $25,000 | $50,000 |
| Theft Damage to Rented Property | Policy Limit | |
| Valuable Papers: | | |
| On premises | $25,000 | $500,000 |
| In transit or at undescribed premises | $10,000 | $500,000 |
| Water Damage, Other Liquids, Powder or Molten Material Damage | Policy Limit | |

*Does Not Apply if a Limit is Shown Previously

THE GOLF CLUB OF DALLAS

### Deluxe Business Income Coverage Form (And Extra Expense) - Described Premises

| Premises Location No. | Building No. | Limits of Insurance |
|---|---|---|
| 1 | 1-11 | $1,100,000 |

Coinsurance percentage applicable: 80
Rental Value: Included
Ordinary Payroll: Included
Extended Business Income: 90 days

#### Deluxe Business Income - Additional Coverages And Coverage Extension

The following Limits of Insurance are included in the coverage form and apply in any one occurrence unless otherwise stated. Revised limits, if any, will be stated in the column on the right.

| | Limits of Insurance | Revised Limits of Insurance |
|---|---|---|
| Business Income from Dependent Property | $100,000 | |
| Claim Data Expense | $25,000 | |
| Newly Acquired Locations | $500,000 | |
| Ordinance or Law - Increased Period of Restoration | $250,000 | |

### Cause of Loss – Equipment Breakdown

The insurance provided for loss or damage caused by or resulting from Equipment Breakdown is included in, and does not increase the Covered Property, Business Income, Extra Expense, and/or other coverage Limits of Insurance that otherwise apply under this Coverage Part.

| Coverage Extension: | Limits of Insurance | Revised Limits of Insurance |
|---|---|---|
| Spoilage | $25,000 | $100,000 |

| Limitations: | Limits of Insurance | Revised Limits of Insurance |
|---|---|---|

---

*Consult Policy for Actual Terms and Conditions*

THE GOLF CLUB OF DALLAS

| | |
|---|---|
| Ammonia Contamination | $25,000 |
| Hazardous Substance | $25,000 |

## Utility Services

| | Limits of Insurance |
|---|---|
| Direct Damage - in any one occurrence | $100,000 |
| Time Element - in any one occurrence | $100,000 |

Coverage is provided for the following:

    Water Supply
    Communication Supply
    Power Supply

Overhead Transmission Lines are included.

THE GOLF CLUB OF DALLAS

### Electronic Data Processing Equipment, Data & Media Coverage DX T3 42

**Limits of Insurance:**

| | |
|---|---|
| Electronic Data Processing Equipment: | $ 250,000 |
| Electronic Data Processing Data and Media: | $ 250,000 |
| Separately Stored Duplicate Electronic Data Processing and Media: | $50,000 |

**Deductible:** "Electronic Data Processing Equipment" and "Electronic Data Processing Data and Media":

$                               In any one occurrence*

* If no deductible is shown, the Deductible that otherwise applies to loss or damage under the Deluxe Property Coverage Form shall apply.

### Deductibles:

**To Utility Services:**

Time Element in any one occurrence:                                                24  Hours

**Business Income:**

As respects Business Income Coverage, for which no other deductible is stated above, a 24 hour deductible applies.

**By Any Other Covered Loss:**

In any one occurrence:                                                              $2,500

**Amendments:**

| | |
|---|---|
| DELUXE PROPERTY COVERAGE FORM | DX T1 00 |
| DELUXE BUSINESS INCOME COV FORM AND EE | DX T1 01 |
| VACANCY RESTRICTION | DX T3 10 |
| CAUSE OF LOSS-EQUIPMENT BREAKDOWN | DX T3 19 |
| FOOD INDUSTRY AMENDATORY ENDT | DX T3 27 |
| DELUXE ORDINANCE OR LAW COVERAGE | DX T3 39 |
| REIMBURSEMENT OF MASTER KEY COSTS | DX T3 81 |
| UTILITY SERVICES- DIRECT DAMAGE | DX T3 85 |
| UTILITY SERVICE- TIME ELEMENT | DX T3 86 |
| FUNGUS,ROT,BACTERIA CAUSE OF LOSS | DX T3 97 |

THE GOLF CLUB OF DALLAS

| | |
|---|---|
| ELECTRONIC VANDALISM LIMITATION ENDT | DX T3-98 |
| TERRORISM RISK INS ACT 2002 DISCLOSURE | DX T4 02 |
| EXCL OF CERTAIN COMPUTER RELATED LOSSES | IL F0 22 |
| FEDERAL TERRORISM RISK INS ACT DISCLOSE | IL T3 68 |
| CAP ON LOSSES CERTIFIED ACT OF TERRORISM | IL T3 79 |
| EXCL. OF LOSS DUE TO VIRUS OR BACTERIA | IL T3 82 |

### Rating Basis

Rating Basis is Based on 100% Values for Blanket Locations plus Scheduled Locations Limits plus Time Element Limits.

| | |
|---|---|
| **Total Rating Basis:** | $6,417,000 |
| **Rate:** | .349992 |
| **Premium for Policy Period:** | $24,022 |

*Note: The Premium shown above includes the premium charged for Equipment Breakdown coverage.  The premium for Equipment Breakdown coverage is $1,547.*

*If you elect not to purchase Equipment Breakdown coverage, please contact your Account Executive and a revised quote without Equipment Breakdown coverage will be sent to you.*

# Charles D. Shackelford

ATTORNEY & COUNSELOR AT LAW

339 W. Centre Street
Dallas, Texas 75304
thelawforms@sbcglobal.net
Phone (214) 941-6911
Fax (214) 946-4283

June 5, 2015

VIA US MAIL/CM-RRR# 4013
Stephanie Davis
Sherma Ruyan
TRAVELERS
1000 Windward Concorse, Ste. 100
Alpharetta, GA 30005


VIA US MAIL/CM-RRR# 7650
Joseph Kelly
Tammy Seymour
Travelers Insurance's
P. O. Box 660452
Dallas, Texas 75266-0452


Re:     *The Golf Club of Dallas*

Dear Travelers Insurance,

Our firm represents Petro Golf Management Company, LLC, d/b/a The Dallas Golf Club concerning recovery of insurance proceeds for internal and structural damage to their building and roof system, as well as associated economic losses, due to your breach of a contract of insurance and negligent failure to timely replace the roof or provide funds to adequately repair the roof of their facilities located at 2200 West Redbird Lane, Dallas, Texas. The Dallas Golf Club has made proper and timely claims to Travelers Insurance for the roof damage complained of, in compliance with the provisions of the contract of insurance issued by your company, and we maintain your company, after liability has, or through due diligence should have been, reasonably clear, has failed to properly pay those monies due my client.

Travelers Insurance's delay to act timely, properly and in good faith has resulted in the complete failure of my client's building's roof system.  The failure of Travelers Insurance to properly investigate and timely approve and authorize repairs when requested has allowed this roof system to deteriorate with every storm during that delay, to the point where the entire roof system must now be replaced, including much, if not all, of the sub structural components of the building's structure, requiring the added expense of bringing those systems up to current City and State building codes.

The damages complained of by my client to their roof system and the resulting water incursion into the building, has produced massive and devastating water damage inside the building as well. My client contends that the failure to timely approve and authorize the repairs to the roof and it's associated components has allowed continuous water leaks which have now damaged or destroyed much the interior systems and allowed water to penetrate walls and internal structures. Most, if not all, of the fixtures, cabinets, flooring and internal mechanical systems need repair or replacement, as well as the need for water and mold remediation in many walls and ceiling spaces.

Exhibit

"B"

Because the facility and business of The Dallas Golf Club is a country club whose draw and mainstay are upscale clientele, the presence of buckled flooring, water pouring through the ceiling tiles into buckets and damaged or closed off areas of the facility have had a devastating effect on their ability to retain members, as well as limited their ability to draw new members, golf tournaments and events to their facility. This damage to their business has had widespread and resonating ill effects on their business. The actions of Travelers Insurance in wrongfully denying this claim is the producing cause of the added and collateral economic damages suffered by my clients, and constitute damages which may be outside the limited provisions of the Insurance policy provisions, but for which we will seek recovery.

The current ownership group acquired insurance on their facility from Travelers Insurance effective November 20, 2011 to November 30, 2012, which included coverage for the entire roof system of the main facility. The main facility houses the various banquet halls, meeting areas, a restaurant, locker rooms and a pro shop, and constitutes the heart of the organization. Prior to issuance of the policy, Travelers had the opportunity to inspect and analyze this building's structure and roof system, and make assessments and adjustments to rates quoted. The rates quoted, and those accepted and paid by my client, were made without reservations or limitations as to the condition of the roof, and Travelers made representation, and my client relied upon that representation, that the policy would cover any and all occurrences or damages to the building and it's roof system that fell within the purview of the policy. That policy of insurance was renewed in 2012, 2013, and 2014.

The roof system on the building had been previously and completely updated pursuant to code in 2001. Although there had been some damage claims on other areas of the property, the functionality and integrity of the roof structure for the main facility was sound that the time in question. United Building Sciences and Engineering Inc.(UBSE) inspected the roof on March 4, 2011, in effect certifying that the roof system was functioning properly and needed only minor repairs to be completely serviceable and insurable. From that point in time until the insurable event in June 2012, there were no issues with the roof and the roof system was functioning as designed.

On June 13, 2012, a major and well documented hail storm struck the area of The Dallas Golf Club, damaging many of the surrounding roofs, including that of my clients. Although the full extent of the damage was not immediately obvious to the untrained eye of my client, they did notice shortly thereafter that they began to have a series of leak events. The severity and frequency of these events began to grow, and my clients performed repairs to the roof, most notably on or about January 18, 2013 and May 2, 2013, to stop and mitigate the damage. In reference to all those events, as well as my client's current claim, Travelers Insurance was contacted. Instead of properly investigating and paying for the repairs per the contract of insurance, Travelers Insurance instead hired United Building Sciences and Engineering Inc. in 2014 to inspect the building, which caused further delays and ultimately resulted in Travelers denying the claim.

United Building Science and Engineering Inc. was the same company that had performed a rather comprehensive roof inspection on this facility in 2011, finding that the roof system was technically sound and serviceable for it's intended use. Just over three (3) years later, they were again called upon to inspect the same roof. Comparison of the reports filed by UBSE show that the 2014 report fails to provide some very basic and common inspection practices at would have alerted Travelers and my clients that there were major issues occurring below the roof's surface as the result of water incursion that was now prevalent throughout the entire roof structure.

Page 3
The Lady, John / Dallas
Letter to Travelers Insurance

There were no indications in the 2014 report that simple core samples were taken, or comprehensive infrared imaging or even rudimentary testing for wind lift and roofing material separation were done. In essence, the personnel for UBSE took pictures, walked the area and appears to have relied heavily on the findings of their past report. Current experts indicate there was significant damage and material failures which would have been evident to one who would have properly inspected the area, and that there was an obvious and substantive change in the roof's condition since 2011 that came as the result of damage received in the 2012 hail storm.

We believe the evidence and expert testimony in this matter will show that, at the time Travelers Insurance Company, through their agent, servant or employee, United Building Sciences and Engineering Inc., were standing on the roof in 2014, it should have been clear that the roofing system had failed as the result of hail damage in 2012. My client maintains the manageable damage that occurred in the hail storm in 2012, could have been contained by proper claims resolution. Instead, water progressed into and through the roof structure throughout 2013 and 2014, destroying the structural integrity of the entire roof system, thereby allowing that rain water to enter into the building in large quantities where it has now infested interior ceiling and wall structures, and damaged electrical and mechanical systems. My client has received water damage to historic cabinetry and iconic areas of the facility once visited by celebrities and historical figures. Much of what has been damaged cannot be replaced.

Although contacted by my client as early as 2013, it appears that Travelers formally denied the claim on MARCH 19, 2014, but continued to investigate the claim well into the end of November, 2014. Based on Travelers' denial and failure to reconsider the claim, we enlisted several experts who made personal inspections of the building and reviewed all of its structural and mechanical systems, It is the common consensus that in the commercial setting, a new, industrial grade roofing system installed to code and officially inspected in 2001, will not and *can not fail* a mere eleven (11) years after its installation without some damage by a major weather event, such as hail or high winds that compromised the material and structural integrity of the components (See Exhibit A attached).

To our support we add *your* expert, UBSE, who in March 2011, testifies that the roof is satisfactory, and in effect, undamaged and functional. We have further testimony that from the time of that March 2011 UBSE report until the hail storm on June 13, 2012, there were no appreciable concerns with the roof system or leaks. After June 13, 2012, there is ample testimony and evidence of a steady influx of leaks which grew in number and intensity, despite numerous repairs, signifying the ever increasing disintegration of the soundness of the roof system as a whole.

Apart from hail, necessarily included in a "hail storm" is wind damage. High speed winds, swirling tornadic activity and flying debris can lift, impact and delaminate roofing materials. (see Exhibit B attached) Once the protective outer surface is breached, the incessant incursion of water begins to slowly destroy wood and fiber underlayments, then the underlying structures, then the base structure, then works it s way into the building. The magnitude of the leaks INSIDE the building is proof positive of this occurrence. It was unreasonable of Travelers Insurance to deny the claim based solely on the 2014 UBSE report, because UBSE had no way to properly assess the situation without core samples, infrared scans or wind lift testing. NONE of those tests, nor any other tests of real significance, were performed in their March 2014

Page 4
The Golf Club of Dallas
Letter to Travelers Insurance

"investigation" of my client's roof, casting great suspicion that the real purpose of the use of UBSE in this instance.

As stated earlier, we enlisted several experts to assess the condition of the facility, not only for it's damage, but for it's repair. Attached as Exhibit C is an Exactomate estimate, constituting a summary of our various expert's estimates of the repairs necessary to correct the physical damage to the roof and the interior components of the building now damaged by Travelers delay in properly resolving this claim. As you can see, the initial estimate, without this assembly of the structure for further inspection, is $2,044,083.28, based on accepted and approved estimation principles. We believe that number may escalate by as much as 30% once the repairs are underway and the true nature of the damage is actually seen.

In addition, because of the undue delay in resolving this claim, both by way of breach of contract, negligence and unfair claim practices, the facility will have to be vacated during the entire renovation, due in part to lack of utilities and unhealthy and dangerous construction area environments. It will either be necessary to acquire 'temporary buildings' for my client to attempt to maintain some form of membership care, or my client will be forced to suspend member services altogether. Current estimate of time for job completion is three (3) months. Based on this time frame, my client maintains their economic losses, expenses and damage to their business goodwill and reputation to date to be $1,000,000.00.

In conclusion, my client demands that Traveler Insurance Company pay the above stated amounts, plus any and all additional monies necessary to complete the repair of this facility. In addition, my client seeks payment of contracted attorney's fees and any adjustment or contractor fees allowed by statute.

Otherwise, my client will pursue any and all claims for breach of contract, common law bad faith, and statutory unfair claims settlement practices under Tex.Ins.Code. Sec.541.060. In addition to recovery of the amounts stated above, we will seek punitive damages under the common law and statute, as well as the payment of attorney's fees and costs of court. We demand resolution of this claim within sixty-one (61) days from your receipt of this letter, or my client has authorized me to file suit to protect their interests.

If you have any further questions or comments, please contact the undersigned.

Sincerely yours,

Charles D. Shackelford

CDS/shs

Attached:     Exhibit A, Maverick Contractors letter
              Exhibit B, Hail storm letter w/photos
              Exhibit C, Estimate 2015 02 05 0701

Page 2
The Golf Club of Dallas
Letter to Travelers Insurance

CC:   VIA US MAIL/CM-RRR # 8032
Scott Mitchell
K. Hunter Harris
ALL AMERICAN INSURANCE ASSOCIATES
2301 E. Hwy 377
Grandbury, Texas 76049

VIA US MAIL/CM-RRR # 8046
Christopher J. Mayer
UNIFIED BUILDING SCIENCES & ENGINEERING, INC.
405 International Parkway, Ste. 209
Richardson, Texas 75081
*(copy attached for your professional liability carrier)*

VIA EMAIL @ tim.schoen@yahoo.com
Tim Schoenbauer
MAVERICK CONTRATORS
9364 Forest Hills Blvd.
Dallas, Texas 75218

VIA US MAIL
THE GOLF CLUB OF DALLAS
2200 W. Red Bird Lane
Dallas, Texas 75232

7012 2210 0001 4572 8046

7012 2210 0001 4572 8039

7012 2210 0001 4572 7650

7012 2920 0000 9657 4013



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Stephanie Davis

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee
B. Received by (Printed Name)   C. Date of Delivery
ORLANDO CRAIG
D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

ENTERED   SCANNED

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Joseph Kelly

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee
B. Received by (Printed Name)   C. Date of Delivery
Willie G. Johnson   JUN 10 2015
D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

SCANNED

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

Article Addressed to:

Scott Mitchell

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee
B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

ENTERED   SCANNED

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☑ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)   ☐ Yes

RECEIVED

2. Article Number
(Transfer from service label)   7012 2210 0001 4572 8039

PS Form 3811, February 2004   Domestic Return Receipt

Davis / Shayna

# Exhibit A-3-b

FILED
DALLAS COUNTY
5/31/2016 10:53:16 AM
FELICIA PITRE
DISTRICT CLERK

CAUSE NO. DC-16-03398

| | | |
|---|---|---|
| PETRO GOLF MANAGEMENT COMPANY, LLC d/b/a THE GOLF CLUB OF DALLAS, | § § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § | |
| vs. | § § | DALLAS COUNTY, TEXAS |
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | § § § | |
| Defendant. | § | 116TH JUDICIAL DISTRICT |

## DEFENDANT'S ANSWER TO
## PLAINTIFF'S ORIGINAL PETITION

Defendant Travelers Property Casualty Company of America ("Defendant") files the following Answer to Plaintiff Petro Golf Management Company, LLC d/b/a The Golf Club of Dallas' ("Plaintiff") Original Petition and Request for Disclosure and states:

### I.
### GENERAL DENIAL

Pursuant to Rule 92 of the Texas Rules of Civil Procedure, Defendant generally denies each and every allegation contained in Plaintiff's Original Petition and Request for Disclosure ("Petition") and demands strict proof thereof. By this general denial, Defendant demands that Plaintiff prove every fact in support of its claims by a preponderance of the evidence.

### II.
### SPECIAL DENIAL

Defendant specifically denies that Plaintiff has satisfied all conditions precedent to the recovery it seeks under Texas statute, Texas law, and/or Travelers Property Casualty Company policy number 630-8948X108-TIL-11, with effective dates of coverage from November 21, 2011 through November 21, 2012 ("Policy").

---

DEFENDANT'S ANSWER TO PLAINTIFF'S ORIGINAL PETITION                                      Page 1

Among other conditions precedent, to recover under the Policy and/or Texas law, Plaintiff must: (a) provide Defendant prompt notice of the physical loss or damage made the basis of its insurance claim; and (b) promptly provide Defendant all reasonably requested documentation and/or information necessary for Defendant to investigate and evaluate such alleged loss and/or damage. Plaintiff failed to satisfy these conditions, thereby precluding it from recovering on its claims for relief in this matter.

### III.
### AFFIRMATIVE DEFENSES

Pursuant to Rule 94 of the Texas Rules of Civil Procedure, Defendant sets forth the following affirmative defenses to the allegations set forth in Plaintiff's Petition:

1.      Plaintiff's claims are barred, in whole or in part, by the applicable statute(s) of limitations.

2.      Plaintiff's claims are subject to all of the terms, conditions, limitations, exclusions, and deductibles set forth in the Policy.

3.      Plaintiff's claims are barred, in whole or in part, to the extent the physical loss or damage claimed by Plaintiff did not occur during the applicable policy period.

4.      Plaintiff's claims are barred, in whole or in part, to the extent the physical loss or damage claimed by Plaintiff was not caused by or did not result from a covered cause of loss (as required by the Policy).

5.      Plaintiff's claims are barred, in whole or in part, to the extent the physical loss or damage claimed by Plaintiff was caused by or resulted from wear and tear, rust, corrosion, decay, deterioration, latent defect, or any quality in property that caused it to damage or destroy itself.

6.      Plaintiff's claims are barred, in whole or in part, to the extent the physical loss or

damage claimed by Plaintiff was caused by or resulted from faulty, inadequate or defective design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction, materials, or maintenance.

7.      Plaintiff's claims are barred, in whole or in part, by the Policy's exclusion for loss or damage caused by or resulting from continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor that occurs over a period of 14 days or more.

8.      Plaintiff's claims are barred, in whole or in part, by the Policy's exclusion of and/or limited coverage for fungus, wet rot, or dry rot.

9.      Plaintiff's claims are barred, in whole or in part, by the Policy's exclusion of consequential loss.

10.     Plaintiff's claims are barred, in whole or in part, by Plaintiff's neglect to use all reasonable means to save and preserve the property from further damage at and after the time of loss.

11.     Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to mitigate its claimed damages.

12.     Plaintiff's claims are barred, in whole or in part, because Plaintiff's alleged damages were caused, in whole or in part, by the negligent acts and/or omissions of Plaintiff.

13.     Plaintiff's claims are barred, in whole or in part, because Plaintiff's alleged damages were caused, in whole or in part, by the negligent acts and/or omissions of third parties over whom Defendant has and/or had no control.

14.     Plaintiff's claims are barred, in whole or in part, by the doctrines of laches, estoppel, and unclean hands.

15.     A bona fide controversy exists concerning the extent of Plaintiff's entitlement to benefits under the Policy. Defendant and/or its employees, agents, representatives, and adjusters are entitled to value claims differently from Plaintiff without facing bad faith or extra-contractual liability. Defendant would show that a bona fide controversy exists regarding: (a) the existence and/or scope of any covered loss or damage; (b) whether and to what extent any asserted loss or damage was the result of a covered occurrence or occurrences; (c) the reasonable and necessary measures to repair any covered loss or damage; and (d) the reasonable and necessary measures to repair any covered loss or damage.

16.     Defendant further reserves the right to assert additional affirmative defenses as this litigation proceeds.

## IV.
## PRAYER

Defendant prays that: (a) Plaintiff's claim for relief be denied in its entirety; (b) Plaintiff take nothing by way of this lawsuit; and (c) Defendant be granted such other and further relief to which it is justly entitled.

Respectfully submitted,

**ZELLE LLP**


By:  */s/ James W. Holbrook, III*
     James W. Holbrook, III
     Texas Bar No. 24032426
     jholbrook@zelle.com
     Jennifer L. Gibbs
     Texas Bar No. 24050656
     jgibbs@zelle.com
     Tyler J. McGuire
     tmcguire@zelle.com
     Texas Bar No. 24098080

901 Main Street, Suite 4000
Dallas, TX  75202-3975
Telephone:   214-742-3000
Facsimile:   214-760-8994

**ATTORNEYS FOR DEFENDANT**


## CERTIFICATE OF SERVICE

This is to certify that, on May 31, 2016, a true and correct copy of the foregoing was served on all counsel of record in accordance with the Texas Rules of Civil Procedure as follows:

Charles D. Shackelford
329 W. Centre Street
Dallas, Texas 75208
Telephone:   214-941-6911
Facsimile:   214-946-4755
thelawfirm@sbcglobal.net
***Attorney for Plaintiff***

                    */s/ James W. Holbrook, III*
                    James W. Holbrook, III